# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| FRED N. JACKSON, ) | |
| ) | No. 2:12-cv-1678-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ERIC K. SHINSEKI, *Secretary of the* ) | |
| *United States Department of Veterans* ) | **ORDER** |
| *Affairs,* ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on a report and recommendation ("R&R") issued by United States Magistrate Judge Bristow Marchant. The magistrate judge recommends that the court grant defendant's motion for summary judgment. Also currently pending is defendant's motion to strike plaintiff's objections to the R&R. For the reasons that follow, the court grants the motion to strike, adopts the R&R, and grants the motion for summary judgment.

## I. BACKGROUND

Plaintiff Fred N. Jackson, an African-American, is a former police chief for the Charleston Medical Center of the United States Department of Veterans Affairs ("the VA Hospital"). On June 2, 2010, Jackson submitted an action plan to the VA Hospital's director to address deficiencies identified in a routine inspection of the hospital's police service. In a signed memorandum attached as a cover to the proposed action plan, Jackson stated that he had "verified the information contained in [the action plan]" and certified that "this information is correct and ready for the Director's signature." Def.'s Mot. for Summ. J. Ex. 1 at 1. On June 7 and June 8, 2010, a senior police chief for one

1

of the department's regional hospital networks, VISN-6 Lead Police Chief Dale Hendley, visited the VA Hospital to assist Jackson in his preparation for an upcoming police service inspection. On June 15, 2010, Hendley submitted a memorandum to the VA Hospital's director that summarized his findings. Hendley's memorandum highlighted his concerns that Jackson's action plan contained misleading and inaccurate information. For example, Hendley's memorandum stated that:

> Of great concern is that the Chief of Police submitted a report for the Director's signature that had been sent to the VISN indicating that the first review was conducted in April 2010. He indicated that three officers were scheduled for their annual physicals; the physicals were completed, signed, and dated. Based on my findings it was very evident that the officers records were not being completed, signed and/or dated in accordance with VA Directive 073D . . . .

Pl.'s Objections to R&R & Opp'n to Mot. for Summ. J., Ex. 2 at 3. With regard to many other aspects of Jackson's action plan, Hendley stated that "Report submitted by the Chief of Police for the Director's signature gives the appearance that this task was completed when in fact it was not." Id. at 5, 6, 7, 10, 12, 13, 18.

On June 29, 2010, the acting assistant director of the VA Hospital sent Jackson a letter charging him with "lack of candor" due to the inaccuracies contained in his action plan. Based upon Jackson's conduct, and upon a 2008 suspension for lack of candor, the acting assistant director informed Jackson that he was recommending that the VA Hospital director terminate Jackson's employment. Def.'s Mot., Ex. 3 at 1-2. Before he could be terminated, Jackson resigned. Pl.'s Objections, Ex. 1 at 4.

Following his resignation, Jackson filed a complaint in the United States District Court for the Eastern District of North Carolina against Eric K. Shinseki, Secretary of the United States Department of Veterans Affairs ("the Secretary"). Jackson's complaint asserts claims for: (1) racial discrimination, retaliation, and constructive discharge under

2

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et. seq.; (2) intentional infliction of emotional distress under South Carolina law; (3) negligent infliction of emotional distress under South Carolina law; and (4) wrongful termination under South Carolina law. Jackson has since conceded "the futility of the retaliation and State law claims." Pl.'s Objections 1 n.2.

The case was transferred to this district on June 19, 2012, and the Secretary filed his motion for summary judgment on April 18, 2013. Jackson's response was due on May 6, 2013. On May 3, 2013, Jackson requested a brief extension of time to respond to the motion for summary judgment. Though the magistrate judge granted the requested extension, Jackson never opposed the Secretary's motion. On July 10, 2013, the magistrate judge issued the R&R, in which he recommended that the court grant the Secretary's motion for summary judgment.

On August 5, 2013, Jackson filed a document entitled "Plaintiff's Objections to the Magistrate Judge's Recommendation and Memorandum of Law in Opposition to Summary Judgment" ("Jackson's objections"). On August 22, 2013, the Secretary moved to strike Jackson's objections.

The motions to strike and for summary judgment are fully briefed and ripe for the court's review.

## II. STANDARDS

The court is charged with conducting a de novo review of any portion of the R&R to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the

responsibility of the court to make a final determination. <u>Mathews</u> v. <u>Weber</u>, 423 U.S. 261, 270-71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See <u>Thomas v. Arn</u>, 474 U.S. 140, 150 (1985).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id.</u> at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. <u>Id.</u> at 255.

### III.  DISCUSSION

The court considers the Secretary's motion to strike before turning to his motion for summary judgment.

#### A.  The Secretary's Motion to Strike

The Secretary moves to strike Jackson's objections for three reasons. First, the Secretary argues that the brief is untimely to the extent that it opposes the motion for summary judgment. Second, the Secretary argues that Jackson's objections do not sufficiently specify the aspects of the R&R to which Jackson objects. Third, the Secretary argues that Jackson has not sufficiently demonstrated that there are genuine disputes of material fact that must be decided at trial.

Though Jackson attempts to classify his filing as an objection to the R&R, his objections are nothing more than an untimely response to the Secretary's motion for summary judgment. Though Jackson sought, and was granted, an extension of time to file such a response, he failed to do so. When Jackson did finally file his opposition, he failed to seek the court's leave, as is required by Rule 6 of the Federal Rules of Civil Procedure. Rather, he attempted to pass it off as a routine objection to an R&R.

Under Rule 6(b)(1)(B) of the Federal Rules, the court may, for good cause and upon motion, extend a party's deadline to respond to a motion "after the time has expired if the party failed to act because of excusable neglect." As Jackson has not moved for an extension of time under Rule 6(b)(1)(B), the court cannot now consider extending his deadline to oppose the motion for summary judgment. Even if Jackson were to move for such an extension, that motion would fall on deaf ears. The fact that Jackson's attorneys misunderstood who was responsible for filing the opposition does not excuse their combined failure to timely file it. Similarly, one attorney's personal financial straits do not eliminate his obligations to his client and to this court. In short, there is no excuse for Jackson's untimely filing. See Robinson v. Wix Filtration Corp., 599 F.3d 403, 413 (4th Cir. 2010) (holding, in the context of a Rule 60 analysis, that an attorney's "inattentiveness to the pending litigation" does not constitute excusable neglect). The Secretary's motion to strike must be granted to the extent that Jackson's objections are construed as his opposition to the motion for summary judgment.

Additionally, Jackson's objections fail to the extent that they are construed as his objections to the R&R. Federal law requires that a party objecting to a magistrate judge's R&R must make specific, written objections. See 28 U.S.C. § 636(b)(1). Jackson's

5

single statement that he "specifically objects to the Magistrate Judge's recommendation of the grant of Summary Judgment in the above-captioned action," Pl.'s Obj. 1, is not, obviously, particularly specific. This single sentence notes an objection to the magistrate judge's ultimate recommendation, and fails to identify any problematic factual findings or legal conclusions. Indeed, the balance of Jackson's objections does not refer to the R&R at all.

For these reasons, the court grants the Secretary's motion to strike Jackson's objections.[1]

### B.  The Secretary's Motion for Summary Judgment

Because the court has stricken Jackson's improperly-filed brief, there are no objections to the magistrate judge's R&R. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). The court is satisfied that the magistrate judge did not clearly err. Indeed, the magistrate judge aptly explained why the Secretary's unopposed motion for summary judgment should be granted. Nevertheless, in an abundance of caution, the court considers the substance of the Secretary's motion for summary judgment and Jackson's objections thereto.

Jackson's arguments against summary judgment are unavailing. As noted above, Jackson's objections concede "the futility of the retaliation and State law claims." Pl.'s Objections 1 n.2. As a result, the court need only evaluate whether the Secretary is

---

[1] Because the Secretary's first two arguments are availing, the court need not consider his third argument in favor of the motion to strike. The Secretary's third argument echoes the substance of his summary judgment motion and the court considers the merits of that argument below.

entitled to summary judgment on Jackson's discrimination and constructive discharge claims.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1) (2012). A plaintiff can establish claims of discrimination under Title VII either by directly showing that discrimination motivated the employment decision, or by relying on the indirect, burden-shifting method set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973). Under the McDonnell Douglas framework, once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that "legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Though the evidentiary burdens shift back and forth under this framework, the plaintiff always bears the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against him. Id.

### 1. Racial Discrimination

The Secretary contends that he is entitled to summary judgment because Jackson has not established a prima facie case of racial discrimination in violation of Title VII. To establish a prima facie case of racial discrimination, a plaintiff who does not have

7

direct evidence of discrimination must show: (1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) his employer took adverse employment action against him; and (4) other similarly situated employees who are not members of the protected class were treated differently under apparently similar circumstances. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) (describing the elements of a prima facie case in the context of an unfair hiring practices claim).

      While Jackson has demonstrated that he is a member of a protected class, he has not met at least two of the other elements of a prima facie case. First, Jackson has not shown that his job performance was satisfactory. It is true that he has provided several performance evaluations from the VA Hospital that reflect that he was performing at "excellent" or "fully successful" levels. However, all of these performance evaluations predate the incident that led to Jackson's departure from the VA Hospital. As described above, the VA Hospital initiated termination procedures against Jackson based upon his lack of candor in his June 2010 action plan, not based on deficient overall performance in his position. Jackson's lack of candor, when combined with a previous suspension (also due to lack of candor), triggered the decision to fire Jackson. Second, Jackson has not shown that other, non-African-American employees were treated differently under similar circumstances. Jackson argues that he "has never even heard of a Chief being fired before an inspection, even if the inspection didn't go well." Pl.'s Objections at 12. He also contends that the prior police chief, a Caucasian man, was not fired even though he had failed an inspection. Jackson's comparison is inapt. The VA Hospital's acting

assistant director recommended that Jackson be terminated because of the misleading statements included in Jackson's action plan, not because the police department had failed an inspection on Jackson's watch.

For these reasons, the Secretary is entitled to summary judgment on Jackson's discrimination claim.

### 2. Constructive Discharge

The Secretary also argues that he is entitled to summary judgment on Jackson's constructive discharge claim because Jackson has not made the necessary showings. An employee is entitled to relief for constructive discharge "if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353-54 (4th Cir. 1995) (internal quotations omitted). In that regard, a plaintiff alleging constructive discharge must show: "(1) that the employer's actions were deliberate, and (2) that the working conditions were intolerable." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006); Honor, 383 F.3d at 186-87. "An employer's actions are deliberate only if they 'were intended by the employer as an effort to force the plaintiff to quit.'" Heiko, 434 F.3d at 262 (citing Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 272 (4th Cir. 2006)). Whether an employment environment is intolerable is an objective inquiry, based on whether a reasonable person would have felt compelled to resign. Id. "[M]ere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 378 (4th Cir. 2004) (internal quotation marks and alterations omitted).

The court assumes, without deciding, that Jackson has demonstrated the first element of a constructive discharge claim – deliberateness – by showing that the VA Hospital had initiated termination procedures against him.  Jackson has not, however, met his burden with respect to the second element of a constructive discharge claim, in that he has not shown that he was subject to intolerable working conditions.  While Jackson's objections do mention an incident in which the VA Hospital's former director scolded Jackson in the midst of a meeting, this is the sort of unpleasant working condition that does not rise to the level of "intolerable."  See Stetson v. NYNEX Serv. Co., 995 F.2d 355, 360-61 (2d Cir. 1993) (collecting cases).  Because Jackson has not shown that he was subject to intolerable working conditions, the Secretary is entitled to summary judgment on the constructive discharge claim.

In summary, even if the court were to consider the substance of Jackson's objections, the Secretary would still be entitled to summary judgment in this case.

### IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** the Secretary's motion to strike, ECF No. 44.  The court also **ADOPTS** the magistrate judge's R&R, ECF No. 36, and **GRANTS** the Secretary's motion for summary judgment, ECF No. 32.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 5, 2013**
**Charleston, South Carolina**